420 So.2d 1162 (1982)
Janita THIBODEAUX
v.
PIONEER LAND DEVELOPMENT & REALTY CORPORATION, et al.
No. 5-138.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1982.
Rehearing Denied November 17, 1982.
Writ Granted December 20, 1982.
*1163 Roger J. LaRue, Jr., Metairie, for plaintiff-appellant.
Montgomery, Barnett, Brown & Read, Nathan T. Gisclair, Jr., New Orleans, for Pioneer Land Development & Realty Corp., defendant-appellant.
Victor E. Bradley, Jr., Norco, in pro. per.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
CHEHARDY, Judge.
This law suit concerns an attempted sale of stock in a closely-held corporation. The purchaser, Janita Thibodeaux (hereafter Thibodeaux), filed suit for a declaratory judgment to have the stock transfer declared valid and to be recognized as a stockholder in the defendant corporation. Alternatively, she sought to have the transfer set aside and to have her money returned to her. She sued both the corporation itself, Pioneer Land Development & Realty Corporation (hereafter Pioneer), and the stockholder who sold her his shares, Victor E. Bradley, Jr. (hereafter Bradley). In turn, Pioneer and Bradley filed reconventional demands against Thibodeaux and third party demands against each other. In addition, Bradley sued Terrel Carmouche, the *1164 corporation's president, and Ronald Carmouche, its secretary-treasurer.
The trial court rendered judgment in favor of Thibodeaux and against Pioneer, finding the transfer valid and ordering Pioneer to issue her a stock certificate for 100 shares. The court also ruled in favor of Thibodeaux against Bradley, ordering him to pay her attorney fees. The court decided in favor of Bradley on his reconventional demand, ordering Thibodeaux to pay him for the promissory notes she signed as consideration for the stock. Finally, the court dismissed the reconventional and third party demands of Pioneer, and assessed costs equally among the parties.
Pioneer has appealed all aspects of the judgment. Thibodeaux has appealed to protect her interest in the event of a reversal; in the event the judgment is upheld, she seeks re-assessment of the interest imposed by the trial judge on the promissory notes. Bradley has neither appealed nor answered the appeal.
Pioneer was incorporated on November 13, 1978 by Bradley and four others, all of whom were named in the articles of incorporation as officers and directors. Bradley was a vice president of the company. He is also an attorney, and he drew up the articles of incorporation. The articles provide for 500 shares of no par value stock. Each incorporator held 100 shares. Article VII(C) of the articles contains a restriction on transfer of shares, providing that no shareholder may sell any stock without first offering it to the corporation for its book value, by a written offer to the corporate secretary which must remain open for 30 days.
On February 22, 1980, Bradley and Thibodeaux entered into a written agreement by which Bradley sold his 100 shares to Thibodeaux for $100,000. The agreement provided for $25,000 of the purchase price to be paid by cashier's check on February 25, 1980, and the balance to be paid by two promissory notes. The agreement also provided that Bradley was to hold harmless and defend Thibodeaux from any suit filed by either Pioneer or any of its stockholders to void the sale of the stock.
On the date of the sale, Bradley endorsed his stock certificate over to Thibodeaux. He also prepared a blank stock certificate showing her as owner of the shares, ready to be signed by the president and secretary of the corporation. Bradley retained possession of both certificates, with Thibodeaux's concurrence, to place them in his bank deposit box for safekeeping. Thibodeaux retrieved the certificates from Bradley sometime around March 27, but the shares were never tendered to the corporation for transfer into her name. On April 30, 1980, Thibodeaux filed this suit, seeking to determine the validity of the transfer.
The full text of the transfer restrictions reads as follows:
"No shareholder may sell any stock of this corporation without first offering it to this corporation on the basis of the book value thereof as shown by the last preceding statement of this corporation, for the common stock. Said offer must be made by delivering to the Secretary of this corporation, against written receipt, the certificates representing said stock, endorsed in blank, and a written offer to sell said stock to this corporation, for cash, at the value hereinabove mentioned. This corporation shall have the right, for a period of thirty (30) days from the delivery of such offer, and said certificates endorsed in blank, to the Secretary of this corporation, to purchase the stock of said shareholder, for cash, at the book value thereof as shown by the preceding statement of this corporation, after which thirty (30) days the said shares may be sold without restriction.
"No sale of any of the stock of this corporation shall be valid and binding until and unless opportunity to purchase such shares has been given to this corporation in the manner in this article provided, and, this right, so vested in this corporation, shall follow any of the stock of this corporation so sold without such opportunity being given to this corporation in the manner into any hands into which it may pass. Such right may be *1165 exercised against the holder(s) of such stock up to ninety (90) days after such shares are tendered for transfer on the books of this corporation, and no transfer of any such shares shall be made on the books of this corporation without the written consent of all of the other record holders of stock of this corporation, during the pendency of said ninety (90) day period.
"The right vested in this corporation to purchase the stock of any shareholder of this corporation desiring to sell any stock of this corporation may be waived, in writing, by all of the other record shareholders of this corporation at any time. * * *"
The central difficulty in enforcing these restrictions arises because they are not mentioned on the face of the stock certificate. LSA-R.S. 12:57(F), in effect on November 13, 1978, states:
"(1) No by-law or other restriction on the transfer of shares, (2) no provision for compulsory offer of shares of its own stock for purchase by, or sale to, the corporation, (3) no agreement among shareholders binding on others than the parties signatory thereto, and (4) no lien or privilege in favor of a corporation on shares of its own stock, shall be recognized or enforced, unless such restriction, provision or agreement, or the right of the corporation to such lien or privilege, is set forth or summarized, or a reference thereto and information as to where the same may be inspected is contained, in the certificates representing the corporation's shares."
LSA-R.S. 12:57(F) is augmented by LSA-R.S. 10:8-204, which took effect on January 1, 1979. That statute provides:
"Unless noted conspicuously on the security, a restriction on transfer imposed by the issuer, even though otherwise lawful, is ineffective, but this provision shall not dispense with the requirements of R.S. 12:57(F) and R.S. 12:210(D). A restriction on transfer shall be effective, even if the restriction is not noted on the certificate, against persons having actual knowledge of the restriction."
In its reasons for judgment, the trial court stated:
"The conflict between the methods for waiver of the restriction contained in Article VII(C) of the corporate articles and Article VI(8) of the unsigned by-laws, coupled with the failure of the stock certificate to conform to RS 12:57(F), RS 12:638, and RS 12:210(D), coupled with the absence of any records that would reflect the operation and administration of the corporation, makes it necessary that this court declare the restrictions on the transfer of defendant corporation's stock are unenforceable and that the transfer from Bradley to Thibodeaux was a good and valid transfer."
The court also concluded the "actual knowledge" clause of LSA-R.S. 10:8-204 was inapplicable because that statute "was not effective until January 1, 1979 and cannot operate retroactively against a certificate issued November 13, 1978."
We conclude the trial court erred in its application of the law.
The bylaws of the corporation were never formally admitted into evidence and are not in the record before us. Therefore they should not have been considered by the trial judge. Further, the testimony and reasons for judgment show these bylaws, drafted by Bradley, were unsigned and undated, and were never formally adopted. It does not appear they were even informally promulgated by him to the other shareholders. Accordingly, they are null and only the restrictions in the articles of incorporation are applicable.
Bradley's stock certificate is devoid of any reference to the transfer restrictions. Were only LSA-R.S. 12:57(F) applicable, as the trial court ruled, there would be no controversy; the restrictions would be ineffective. (Both LSA-R.S. 12:638 and 12:210(D), also cited by the trial judge, are inapplicable. R.S. 12:638 was repealed by the passage of the act which included R.S. 10:8-204. R.S. 12:210(D) applies only to nonprofit corporations.)
*1166 We find, however, that R.S. 10:8-204 is applicable to this proceeding. The transfer to Thibodeaux took place more than a year after the statute's effective date. The "actual knowledge" provision refers not to an event transpiring at the time the stock certificate was issued, but rather to knowledge at the time of a transfer occurring after the statute took effect.
Pioneer's discussion of this issue in its brief is apposite, therefore we adopt it here:
"* * * [A] simple reading of the statute itself will show that it clearly contemplates enforceability of restrictions in circumstances in which a stock certificate is transferred or attempted to be transferred. It is therefore * * * irrelevant * * to direct [one's] attention to the date that the corporation was created and incorporeal shares in the ownership of the corporation were likewise created, i.e., the time of formation of the corporation. The statute has nothing to do with the principles of corporate formation or of the issuance of stock certificates per se; rather it deals with the conditions under which a corporation or its shareholders may take action to enforce pre-existing transfer restrictionsregardless of the contents or provisions of any specific stock certificate. The statuteproperly interpreteddoes not apply retroactively to previously issued stock certificates; rather it applies prospectively to any transaction wherein stock certificates are transferred which occurs after the effective date of the statute." Brief on behalf of defendant-appellant, Pioneer Land Development & Realty Corporation, p. 17.
Thibodeaux contends that R.S. 10:8-204 conflicts with R.S. 12:57(F) because R.S. 10:8-204 states the requirements of R.S. 12:57(F) shall not be dispensed with, yet at the same time allows persons having actual knowledge of a restriction not noted on a security to be bound thereby. We fail to see any conflict. R.S. 12:57(F) simply lists things in addition to restrictions on transfer that must be referred to on stock certificates, i.e., provisions for compulsory offer of shares, shareholder's agreements, and liens or privileges in favor of the corporation. The language of R.S. 10:8-204 makes clear that it was intended to augment rather than to supplant R.S. 12:57(F).
Since R.S. 10:8-204 is the pertinent law, the question remaining is whether Thibodeaux had actual knowledge of the transfer restrictions, so that they are effective despite not appearing on the certificate.
Bradley testified he met informally with Terrel and Ronald Carmouche (the president and secretary-treasurer of the corporation) on February 18 and advised them of his negotiations with Thibodeaux. According to Bradley, they told him they could not afford to buy the stock at the price Thibodeaux was paying. Delma Cheek, the fourth shareholder, was involved in the negotiations between Bradley and Thibodeaux, and obviously knew of the situation. (Louis Carmouche, the fifth shareholder, was not mentioned by any of the witnesses.)
On February 22, the day the sale agreement with Thibodeaux was signed, Bradley sent the following letter, addressed to Pioneer Land Development & Realty Corporation, to the attention of Terrel, Louis and Ronald Carmouche, and Delma Cheek:
"Gentlemen:
In accordance with the meeting held on Monday, February 18, 1980, I hereby tender for purchase to this corporation, of which you are the remaining stockholders, my one hundred (100) shares of stock, twenty (20%) percent interest, in this corporation for the sum of One Hundred Thousand & No/100 ($100,000.00) Dollars.
I would appreciate your advising me as soon as possible of your decision in this matter."
On March 19, 1980 an attorney retained by the corporation sent Bradley a letter refusing his tender for failure to comply with the provisions of the corporate articles.
Thibodeaux testified she began discussing the sale of the stock with Bradley around the first week in February. She met with him four or five times and Delma Cheek was always present. She denied there was ever any discussion of possible problems or *1167 restrictions on sale of the stock, either by Bradley or by Cheek. She said, however, that on February 22 when she went to sign the document Bradley told her for the first time he had to offer it to the other shareholders.
She said Bradley took it upon himself to insert the hold harmless paragraph and she had not seen it prior to signing the document. She testified she thought the purpose of the agreement was to protect her from personal liability on notes signed by shareholders. She stated she placed her faith in Bradley because he was an attorney. She never took the stock certificate to Pioneer to get new stock issued because she thought Bradley was going to do it.
She testified further that after the transaction she contacted an attorney, Charles Barbera, to look over the documents. She also said Bradley told her she did not have anything to worry about. He told her he would have to make an offer to the other stockholders first and she told him that was all right with her. She testified he told her he offered them the stock but they could not afford it.
Bradley testified he met with Barbera on February 21 (the day before the sale). During that meeting he discussed problems as to selling the stock and his previous meetings with the Carmouche brothers. As a result of the meeting, he sent Barbera a copy of his letter to the other stockholders.
Bradley said the hold harmless provision was put into the sale agreement because of the problem with the articles of incorporation and the sale of stock. He stated the problems were discussed with Thibodeaux, and he explained he had offered the stock to the other shareholders at the same price and they were not going to purchase it. He expressed his opinion that the stock was open for sale.
Bradley's secretary, Michele Waguespack, testified she typed up the agreement. She said Bradley and Thibodeaux talked about possible objections by the Carmouches to sale of the stock, so Bradley put the hold harmless clause in the agreement. She also recalled that Barbera phoned the office for Bradley on February 21 and that Bradley went out to meet with him on the same day. She also heard Bradley tell Thibodeaux she should go to the corporate offices so they could sign the new certificate made out to her. She recalled Bradley saying he thought it was a valid sale but that the Carmouches might have objections; she heard him reassure Thibodeaux, saying that in his opinion as an attorney it was a valid sale.
Neither Charles Barbera nor Delma Cheek testified at trial.
Considering the foregoing, we conclude Thibodeaux must be deemed to have had actual knowledge of the transfer restrictions, sufficient to bring her within the scope of LSA-R.S. 10:8-204. As far as can be ascertained from a cold record, she was a naive participant in securities transactions. She did not realize the full implications of the information, and sheand apparently her attorneyrelied on Bradley's assurances of the transfer's legal validity. Nonetheless, from the totality of the evidence, she, and her attorney as her agent, were informed of the restrictions. Her reliance on Bradley's interpretation of the effectiveness of the sale cannot affect the corporation's right under the transfer restrictions, because her knowledge of the existence of the restrictions brings her within the scope of R.S. 10:8-204's "actual knowledge" exception. As a result, Bradley's sale of the stock to Thibodeaux is invalid.
Although our conclusion is that sought by Pioneer, we cannot supply Pioneer the relief for which it prays. Pioneer seeks to obtain Bradley's stock for payment of its book value, $863.20. Under the transfer restrictions, that is the price for which Bradley would have had to offer the stock to the corporation before selling it to an outsider. However, the record establishes that Bradley never offered the stock to Pioneer for its book value; his offer was to sell it for $100,000, the price Thibodeaux was paying. Pioneer itself has strenuously contended, at trial and on appeal, that notice *1168 to it was not proper, that the other conditions giving rise to the option were not fulfilled, and that it was not in any way bound or required to exercise its option or to respond in any way to Bradley's February 22 letter.
"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. * * *" LSA-C.C. art. 2164. It would be most unjust to require Bradley to give up his stock to the corporation for $863.20 when it is worth $100,000 to at least one buyer, when he has made no offer to sell it for the lower price. Consequently, we conclude the proper result is to return all parties to their status quo ante with respect to their stock ownership.
Our conclusion on this major issue makes it unnecessary to discuss Pioneer's claim against Bradley for breach of fiduciary duty, or Thibodeaux's alternative appeal regarding the amount of interest on the promissory notes. Those matters are rendered moot by our decree herein.
The final issue is Thibodeaux's request for additional attorney's fees for this appeal. That request is justified, and Bradley is liable for them under the district court's judgment, which awarded them pursuant to the hold harmless provision of his agreement with Thibodeaux. We find $250 to be an adequate fee for this appeal.
Accordingly, the judgment of the district court is reversed in part, affirmed in part, amended and recast.
It is ordered, adjudged, and decreed that there be judgment herein as follows:
1. In favor of Pioneer Land Development & Realty Corporation and against Janita Thibodeaux, declaring null Thibodeaux's purchase of 100 shares in said corporation represented by Stock Certificate Number 4, and ordering Thibodeaux to return Stock Certificate Number 4 to Victor E. Bradley, Jr.;
2. In favor of Janita Thibodeaux and against Victor E. Bradley, Jr., in the amount of $25,000 plus legal interest from the date of this judgment until paid; further, it is ordered that Bradley return to Thibodeaux the promissory notes signed by her as part of the transaction made the basis of this suit;
3. In favor of Janita Thibodeaux and against Victor E. Bradley, Jr., for attorney's fees in the amount of $1,750 with interest from date of judicial demand until paid;
4. In favor of Janita Thibodeaux and against Victor E. Bradley, Jr., dismissing Bradley's reconventional demand;
5. In favor of Pioneer Land Development & Realty Corporation, Terrel Carmouche and Ronald Carmouche, and against Victor E. Bradley, Jr., dismissing Bradley's third party demand against them; and
6. In favor of Victor E. Bradley, Jr., and against Pioneer Land Development & Realty Corporation, dismissing Pioneer's third party demand against Bradley.
All costs are to be paid by Janita Thibodeaux and Victor E. Bradley, Jr.
REVERSED IN PART; AFFIRMED IN PART; AMENDED AND RECAST.