PRESTON H. HUFFT, Judge Pro Tem-pore.
In these consolidated appeals, we are called upon to interpret a provision of the articles of incorporation of a closely held corporation that requires stockholders to offer their stock for purchase by the corporation at book value before transferring it to anyone else. The trial court held that an attempted sale of stock without first affording the corporation its option divested the stockholder of ownership and accorded the stock the status of corporate or treasury stock. The court further held that an attempted donation of stock was also invalid. Although we likewise conclude that these attempted transfers were invalid, we hold that the transferring shareholder did not thereby lose ownership of her stock.
BACKGROUND

Appeal No. CA-3713

Prior to this litigation, the 250 outstanding shares of the Louisiana Weekly Publishing Co., Inc. were owned by the corporate secretary Henry B. Dejoie, Sr. (92 shares), his brother Constant C. Dejoie, Jr. (91 shares), who was corporate president and publisher, their sister Vivian Dejoie *1128 Roussell (60 shares), Louise Wilcox (5 shares), and Lawrence Webb (2 shares).
Although the stock certificates bore no reference to any restrictions on their sale, transfer or dispostion, Article IV of the articles of incorporation of the corporation provided as follows:
“The subscription for, and the ownership of all stock in this corporation are made and taken upon the condition that any holder of stock desiring to sell the same, shall first offer his stock to the corporation, and the corporation shall have thirty (80) days in which to exercise its option to purchase the same, at the then book value thereof. On its refusal to purchase, the stockholders shall have ten (10) days to exercise their option to purchase such stock at said price, after the expiration of such time the stockholder shall be free to make any other sale of his stock. In the event of the death of a stockholder, all stock held by the deceased shall go to his legal heirs.”
On November 12,1982, Vivian Dejoie Rous-sell (hereinafter referred to as Vivian), who was unaware of this transfer restriction, sold her 60 shares to her brother Constant C. Dejoie (hereinafter referred to as Constant) for $25,000.00, without first offering them for purchase at book value by the corporation. Constant thereafter donated one share each to six individuals who were elected as officers and directors at shareholder meetings on June 9 and July 9, 1984.[1] The newly elected board also passed resolutions giving Constant sole authority to sign and draw checks on the corporate bank accounts.
Henry B. Dejoie, Sr. (hereinafter referred to as Henry) disputed the purported sale of stock by Vivian to Constant and the actions taken at these meetings. On July 9, and July 27, 1984, Henry convened meetings of the rival, pre-existing board of the corporation, which then proceeded to elect him corporate president and his daughter Renette Dejoie Hall (hereinafter referred to as Renette) corporate treasurer, and to invest them with exclusive signature authority over company bank accounts.
On July 12,1984, Constant and the corporation filed a suit for injunction against the First National Bank of Commerce, Henry, and Renette to obtain recognition of the actions at the meetings on June 9 and July 9, 1984, and seeking to enjoin the bank from refusing to recognize Constant as the sole signatory authority of the corporate accounts. The defendants reconvened in quo warranto questioning the authority of Constant and his faction to act as officers and board members.
In an October 19, 1984 judgment, the trial court ruled in favor of the petitioners in quo warranto and ordered that Constant and the other officers and directors elected at the meetings of June 9 and July 9, 1984 relinquish their respective positions and be restrained and enjoined from implementing or acting upon any of the resolutions passed. In written reasons for judgment, the trial judge concluded that the actions taken at those meetings were invalid because the shareholders of the corporation had not been properly notified. He further found that the resolutions passed by Constant as a majority stockholder were invalid because Vivian’s purported sale of 60 shares to him had not been in compliance with Article IV of the articles of incorporation. In dictum, the trial judge stated: “Since Vivian Roussell’s 60 shares of stock were not offered to the corporation in accordance with the charter, they would be considered corporate or treasury stock.” The trial judge further held, however, that the meetings held at the request of Henry were also invalid because there was no documentary evidence of proper notice to all of the shareholders.
Although they do not dispute the trial judge’s conclusions concerning the inadequacy of notice of the meetings, Constant and the corporation have protectively appealed the October 19, 1984 judgment to *1129 prevent the trial judge’s dictum designation of Vivian’s 60 shares as “treasury stock” from becoming res judicata.

Appeal NO. CA-3828

Following the trial court’s judgment, Henry gave notice on November 18, 1984, of a December shareholders’ meeting to all shareholders except Vivian. On November 20, 1984, Constant and Vivian rescinded the November, 1982 sale of the 60 shares of stock. On November 27, 1984 Henry received a copy of the act of rescission and a proxy by Vivian to Constant authorizing him to cast her vote on the 60 shares at the upcoming shareholders’ meeting. At the December 4 meeting, however, Henry refused to recognize Vivian’s status as a stockholder or the validity of her proxy. The shareholders’ meeting proceeded with the election of a new board, which then convened to elect new corporate officers and to vest exclusive check signing authority in Henry and Renette.
On December 6, 1984, Vivian, Constant and the corporation filed a petition for writ of injunction, which was later transformed by stipulation into an action in quo war-ranto, whereby plaintiffs questioned the validity of the December 4, 1984 shareholders’ and board meetings for lack of notice to Vivian.
On December 17, 1984, Henry, purporting to act on behalf of the Louisiana Weekly, tendered $25,000.00 to Vivian for her 60 shares of stock. Vivian rejected the offer and returned the check. She has retained the certificates of stock representing her ownership of 60 shares in the corporation, has never offered her stock to the Louisiana Weekly and does not desire to sell it to the corporation or any other person. The $25,000.00 was filed into the registry of the court for Vivian’s benefit.
In a judgment on April 12, 1985, the trial court ruled against the petitioners in quo warranto and recognized the validity of the special shareholders’ meeting in December, 1984. In written reasons for judgment, the trial judge concluded that Vivian did not have the status of a shareholder when the notice of the meeting was sent out in November, 1984, because her attempted sale of her 60 shares of stock to her brother Constant without first offering them to the corporation had been in violation of the transfer restriction of Article IV of the corporation’s articles of incorporation. Citing his prior reasons for judgment of October 19, 1984, the trial judge stated that the 60 shares had been accorded the status of corporate or treasury stock and that the company’s December 17, 1984 “overture” to Vivian for purchase of her shares was “timely”. The trial judge viewed the rescission of the prior sale and Vivian’s proxy to Constant as attempts “to evade the clear mandate set out in this court’s judgment of October 19, 1984, and Article IV of the corporate charter.” The trial judge further held, however, that the board of directors meeting following the special shareholders meeting on December 4,1984 had no force and effect for lack of a quorum.
Constant and Vivian have appealed from the judgment of April 12, 1985.

Appeal NO. CA-3881

Meanwhile, on February 21, 1985, Constant had donated one share of his stock to his son and sole descendant, Michael C. Dejoie. Relying on the prior October 19, 1984 judgment of the trial court, however, Henry subsequently refused to recognize either Michael or Vivian as shareholders.
On April 16, 1985, Vivian, Constant, Michael and the corporation filed a petition for writ of mandamus seeking to require Henry as corporate secretary to alter the corporate records to list Vivian as owner of 60 shares and Michael as the owner of 1 share. On May 20, 1985, the trial judge ruled against plaintiffs and held that Henry had properly refused to change the corporate records.
In written reasons for judgment, the trial judge held that the corporation’s offer to purchase Vivian’s 60 shares and the tender and deposit of the purchase price in the registry of the court had accorded those shares the status of treasury stock. He further held that Constant’s attempted do *1130 nation of stock to his son was likewise invalid because Constant had failed to offer the corporation an opportunity to exercise its option to purchase the share at book value. Although the corporate charter does not specifically refer to restrictions on transfer of stock by donation, the trial judge held that it was clearly the intent of the incorporators to preserve the status of the company as a closed corporation by prohibiting the transfer of stock by sale, donation or otherwise without first complying with the provisions of Article IV of the articles of incorporation.
Vivian, Constant and Michael have appealed from this judgment.
CONTENTIONS
The thrust of appellants’ arguments on appeal is basically twofold: 1) that the trial court erred in holding or reasoning that Vivian’s attempted sale of her 60 shares of stock to Constant Dejoie without first offering it to the corporation as provided in Article IV of its articles resulted in an “automatic conversion” of her stock to treasury stock and 2) that the trial court erred in ruling that Article IV prohibits donations without prior offer for purchase of the stock by the corporation.
MERITS
We find merit to appellants’ argument that the judgment is erroneous insofar as it divests Vivian of her ownership of her stock. The trial judge’s conclusion that the attempted sale by Vivian to Constant accorded the shares the status of treasury stock is unsupported by the express provisions of Article IV of the articles of incorporation and the case law.
Article IV simply provides that “any holder of stock desiring to sell the same, shall first offer his stock to the corporation, and the corporation shall have thirty (30) days in which to exercise its option to purchase the same, at the then book value thereof.” The restriction does not state, however, that an attempted sale in contravention of its provisions will result in a forfeiture of the shares to the corporation or afford the corporation an automatic option to purchase. Although Vivian’s attempted sale of the stock without first offering it to the corporation obviously contravenes Article IV, which makes such an attempted sale invalid, there is no basis in the express wording of the article for converting the stock to treasury shares. Indeed, Vivian and Constant have repudiated the sale; Vivian has never offered her stock to the corporation pursuant to Article IV and desires to retain her stock.
Blum v. Latter, 163 So.2d 189 (La.App. 4th Cir.1964), writs refused 246 La. 717, 167 So.2d 301 (1964), is a controlling precedent for our decision. The corporate charter of Latter & Blum, Inc. provided that no stockholder would be permitted to sell or otherwise dispose of his stock without first offering the same in writing to the other stockholders at a price not exceeding book value and that the stockholders, to whom such offer was made, would have a 20 day option and first right to purchase the shares to be disposed of. In Blum we held that an attempted donation of stock in violation of this provision of the corporate charter, did not have the effect of creating, ipso facto, an option in the other stockholders:
“The plaintiffs assert a claim to thirty-five shares of stock in the corporation, by virture of an attempted donation of this stock by the widow of Harry Latter. She acquired the stock as surviving spouse in community. Plaintiffs contend that the provisions of Article X of the corporate charter, quoted above, have the effect of creating an option in the other stockholders when a transfer is attempted in violation of its provision. This contention also is without merit. While such a transfer may be prevented, the transferor does not thereby make an offer to other stockholders. He has the choice of retaining it in his own name or first offering it to the other stockholders. But his attempted disposition does not automatically create the offer to other stockholders.” Supra, at p. 198.
*1131 In the instant case, as in Blum, Vivian’s attempted sale of stock to Constant in violation of Article IV is invalid, and indeed has been repudiated by the parties involved, but her attempted disposition does not automatically create an offer to sell the stock to the corporation or convert the stock to the status of corporate or treasury stock as held by the trial judge. In accordance with our holding in Blum, Vivian has the option to retain the stock or offer to sell it to the corporation before otherwise disposing of it. She has consistently refused to offer the stock to the corporation, has chosen to retain the stock and should be afforded her full rights as a shareholder. Accordingly, we hold that the failure to notify Vivian properly of the special shareholders’ meeting of December 4, 1984, invalidates all elections and actions undertaken at that meeting and the subsequent meeting of the board of directors.
In so relying on our decision in Blum, we reject appellees’ attempt to distinguish the cited ease by characterizing the attempted donation in Blum as “inchoate” in contrast to the “completed” sale of stock by Vivian to Constant, which was “rescinded” years after its consummation. We view this argument as one raising a distinction without a difference. The reasoning in Blum applies to both incomplete and completed transfers in contravention of restrictions in the corporate articles of incorporation.
Our decision is also consistent with Thibodeaux v. Pioneer Land Development & Realty Corporation, 420 So.2d 1162 (LA.App. 5th Cir.1982), writ granted and judgment amended to award legal interest, 423 So.2d 1178 (La.1982). In Thibodeaux the articles of incorporation provided: “No shareholder may sell any stock of this corporation without first offering it to this corporation on the basis of the book value thereof as shown by the last preceding statement of this corporation, for the common stock.” A shareholder sold his stock to Thibodeaux for $100,000 and on the same day, with the purchaser’s knowledge, offered his stock to the corporation for $100,000 to give the corporation a right of first refusal. The book value of the stock at the time was $863.20. The corporation refused the tender of the sale of the stock for $100,000.
The Thibodeaux court held that the sale to Thibodeaux for $100,000 was invalid because the parties had not complied with the provisions of the articles of incorporation requiring the stock to be offered to the corporation at book value for a right of first refusal. The court rejected the corporation’s contention that the sale of the stock to Thibodeaux in contravention of the articles of incorporation had the effect of converting the offer to sell the stock to the corporation for $100,000 into an offer to sell the stock to the corporation in accordance with the articles of incorporation for the book value of $863.20. The court reasoned that no offer had been made to sell the stock to the corporation at its book value and that the action of the shareholder in selling his stock in contravention of the transfer article would not automatically create such an offer to be exercised at the will of the corporation.
In our case, Vivian has never made an offer to sell her stock to the corporation nor does she desire to do so in the future. Hence, the sale of her stock to Constant in contravention of Article IV would not in any way create an offer on her part to sell her stock to the corporation for its book value or $25,000, nor would it result in the conversion of such stock into corporate or treasury stock.
Turning now to Constant’s gift of one share of stock to his son Michael, we reject appellants’ second contention that Article IV does not apply to inter vivos donations of stock. In Blum, the restrictive transfer article preventing an inter vivos donation in contravention of its provisions contained the following language: “No stockholder shall be permitted to sell or otherwise dispose of his stock without first offering the same in writing to the other stockholders, as hereinafter set forth, at a price not exceeding the book value thereof, which value shall be determined by *1132 audit, made as of the date of said offer.” Appellants contend that the holding in Blum is not controlling in our case because Article IV does not contain a provision against “otherwise disposing” of the stock. However Article IV, unlike the Blum article, does contain the following restriction: “In the event of the death of a stockholder, all stock held by the deceased shall go to his legal heirs.” The inclusion of the provision relative to restricting even donations mortis causa evidences a clear intent on the part of the incorporators to restrict and govern the transfer of stock from the moment of acquisition to the grave. Article IV provides the stockholders of this closely held corporation with control as to who will be involved with them in the conduct of the business of the corporation, except with respect to the existence of legal heirs upon the death of a stockholder. By providing that a transfer without corporate approval shall be limited to the transfer of stock only on the death of the stockholder and then only to his legal heirs regardless of his wishes, Article IV thereby implicitly prohibits all donations inter vivos, unless there is compliance with the restrictive provisions of the article. We hold, therefore, that in order for a donation inter vivos to be valid under Article IV, the donor must first offer the stock to the corporation for a right of first refusal. Hence, the donation by Constant to Michael as well as the earlier donations by Constant to the parties listed in Footnote 1 are invalid.
Accordingly, although we reverse that portion of the May 20, 1985 judgment refusing to recognize Vivian’s status as a shareholder, we affirm the judgment insofar as it invalidates the donation of one share of stock by Constant to his son Michael and refuses to recognize Michael’s status as a shareholder of the company. We recast the judgment to invalidate Constant’s prior donations also.
DECREE
For the foregoing reasons, the judgment of October 19, 1984, is affirmed in its result, although this Court does not subscribe to the trial court’s written reasons concerning the status of Vivian Roussell’s 60 shares of stock as corporate or treasury stock.
The judgment of April 12, 1985, is reversed and set aside. Judgment is now rendered in favor of petitioners, Vivian De-joie Roussell and Constant C. Dejoie, and against defendants, Henry B. Dejoie, Sr., Renette Dejoie Hall, Hilliard C. Fazande, II, and the Louisiana Weekly Publishing Co., Inc., holding that the special shareholders’ meeting and the board of directors meetings on December 4, 1984 were invalid. IT IS NOW ORDERED ADJUDGED AND DECREED that the Louisiana Weekly Publishing, Inc. and its officers, agents and/or employees are restrained and permanently enjoined from recognizing the corporate officers and members of the board elected at said shareholders’ meeting and from implementing or acting upon any actions undertaken or resolutions passed at the meeting of said board of directors.
The judgment of May 20, 1985 is affirmed insofar as it refuses to recognize Michael C. Dejoie as the owner of one (1) share of stock in the corporation. The judgment is reversed, however, insofar as it refuses to recognize Vivian Dejoie Rous-sell’s status as a shareholder. IT IS NOW ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiffs, Vivian Dejoie Roussell, Constant C. Dejoie, Jr., as stockholders of the Louisiana Weekly Publishing Company, Inc. and the Louisiana Weekly Publishing Inc. and against defendants Henry B. Dejoie, Sr., secretary of the Louisiana Weekly Publishing Co., Inc. and the Louisiana Weekly Publishing Inc. A writ of mandamus is hereby issued directing the defendants to recognize Vivian Dejoie Roussell as the holder and owner of sixty (60) shares of stock in the Louisiana Weekly Publishing Co., Inc., to recognize Constant C. Dejoie, Jr. as the holder and owner of ninety-one (91) shares in the corporation, and further directing the defendants to record the ownership of stock as set forth herein on the books of the corporation. Judgment is fur *1133 ther rendered invalidating Constant C. De-joie, Jr.’s prior donations of stock to Julia Dejoie, Michael C. Dejoie, John S. Keller, Louis Gerdes, Jr., Dr. Ambrose Pratt, and Dr. John Belden.
Costs to be divided equally between the parties.
OCTOBER 19, 1984 JUDGMENT AFFIRMED;
APRIL 12, 1985 JUDGMENT REVERSED AND SET ASIDE; RENDERED;
MAY 20, 1985 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; RENDERED

. The donees were: Julia Dejoie, Michael C. Dejoie, John S. Keller, Louis Gerdes, Jr., Dr. Ambrose Pratt, and Dr. John Belden.