237 So.2d 408 (1970)
Larry H. CIMO
v.
NATIONAL MOTOR CLUB OF LOUISIANA, INC.
No. 4056.
Court of Appeal of Louisiana, Fourth Circuit.
July 6, 1970.
*409 Reed, Reed & Reed, Floyd J. Reed, New Orleans, for plaintiff-appellee.
A. J. Graffagnino, Metairie, for defendant-appellant.
Before BARNETTE, LeSUEUR and SWIFT, JJ.
BARNETTE, Judge.
The plaintiff, Larry H. Cimo, purchased from Philip A. Borges, a stockholder in National Motor Club of Louisiana, Inc., a stock certificate for 25 shares of stock issued by the defendant corporation to Borges. The defendant corporation refused to recognize the stock transfer from Borges to Cimo and to make the necessary transfer on the books of the corporation and to issue a new certificate to Cimo. This suit was filed to compel the defendant corporation to do so. The trial court rendered judgment in plaintiff's favor ordering the transfer to be made and a new certificate in the name of Cimo to be issued. The defendant has appealed.
Defendant's refusal to make the stock transfer on its books and to issue a new certificate in the name of Cimo is based upon the alleged violation of a restrictive covenant in "AGREEMENT GOVERNING SALES OF STOCK OF NATIONAL MOTOR CLUB OF LOUISIANA, INC." The agreement filed in evidence by stipulation contains the following pertinent conditions with the provisions to *410 price omitted as irrelevant to the issues in this case:
"3.
No shareholder shall sell, assign, transfer, pledge, hypothecate, or otherwise in any manner alienate or in any way dispose of any shares of the capital stock of the Company unless such shares shall first have been offered for sale to the Company by written offer personally served upon an officer of the Company, or sent by certified mail, postage prepaid, addressed to an officer of the Company at the Company's principal place of business. The Company shall have the exclusive right and option, within ninety (90) days after receipt of such written offer of sale, to purchase such shares from such offering shareholder at the price hereinafter provided. * * * After the expiration of such time, the shareholder, if the Company shall not have exercised its option to purchase such shares, shall be free to transfer, alienate or otherwise dispose of such shares to any person, firm or corporation he may desire.
4.
If any shareholder shall cease to be a full time employee of the Company * * the Company shall have the exclusive right and option exercisable within (90) days after the termination of such employment * * * to purchase all or a portion of the shares held by such shareholder at a price determined as hereinafter provided. * * *"
The original stock certificate in question was issued February 1, 1966, to Philip A. Borges for 25 shares of the capital stock of defendant corporation of $25 par value per share. On the face of the certificate is the following:
"* * * [T]ransferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed."
On the reverse side of the certificate is a transfer blank to be filled in and signed by the holder and also the following:

"NOTICE OF RESTRICTIVE STOCK TRANSFER AGREEMENTS
You are hereby placed on notice that there are certain restrictive stock agreements and/or amendments thereto which impose restraints on the power of the holder hereof or heirs to sell, transfer, pledge, hypothecate, alienate and otherwise dispose of the shares of stock represented by this certificate and grant unto the Company an option to purchase these shares exercisable upon certain eventualities therein described.
These various agreements are on file among the records of this corporation and are available there for your inspection, or full information concerning same may be secured by contacting the Secretary of this corporation, 2711 Cedar Springs, Dallas, Texas."
At the time of the issuance of the stock certificate to Borges he was an employee of the corporation. His employment relationship was terminated in May, 1967.
There are a number of National Motor Clubs which apparently have a close corporate affiliation with the same president with headquarters in Dallas, Texas. Borges was a member of several of the Boards of Directors. G. H. Kelsoe, a Dallas attorney, was the attorney for the several affiliated corporations. The defendant corporation was originally one of the group but severed its affiliation in October or November of 1967 and thereafter operated as a distinct and separate corporation with E. E. Crumpler, a resident of Jefferson Parish, as its president.
In February, 1968, there was a meeting in Mr. Kelsoe's office in Dallas about which Kelsoe testified as follows:
"Well, sir, I represent various of the National Motor Clubs and there was a termination of affiliation of all other motor *411 clubs with the National Motor Club of Louisiana and there were some matters to be settled and Mr. Crumpler and Mr. Graffagnino [identified as attorney for Crumpler and the corporation] and I previously, maybe Mr. Pollack and Mr. Eddy were all in my office in Dallas and we worked out a settlement on those termination matters and at that time Mr. Crumpler told me that he would like to acquire the stock of Mr. Borges and it was, so I told him that I would get a hold of Mr. Borges and see if he was agreeable to selling it."
Pursuant to this agreement Kelsoe did contact Borges who signed the stock transfer certificate in blank, dated it March 11, 1968, and mailed it to Kelsoe. Thereafter the negotiations between Kelsoe as attorney for Borges and A. J. Graffagnino as attorney for Crumpler are disputed.
Kelsoe testified that on March 25, 1968, he addressed a letter to Graffagnino which in pertinent part is as follows:
"You will recall at the time of the settlement that Mr. Crumpler advised me he desired to purchase the stock of Phillip [sic] A. Borges in National Motor Club of Louisiana. I conveyed this to Mr. Borges, and I have recently received from him stock certificate No. 8 for 25 shares in National Motor Club of Louisiana, Inc. If you will advise me as to the book value per share which Mr. Borges will receive for this certificate, I will communicate this to him, and upon his approval will deliver said certificate for 25 shares to you in exchange for said proceeds. Kindly let me hear from you."
He also testified that another letter dated April 12, 1968, was mailed to Graffagnino, reading as follows:
"Mr. Borges has asked me again about the book value of the 25 shares of stock which he owns in National Motor Club of Louisiana, Inc. I am authorized to deliver this stock to National Motor Club of Louisiana, Inc. on being paid the book value per share as per the terms of the Restrictive Stock Agreement.
Kindly give this matter your attention and advise."
Kelsoe identified copies of the letters which were filed in evidence in connection with his testimony. Graffagnino denied receiving either of the letters.
The actual sale of the stock by Borges to Cimo, according to their testimony, was on June 27, 1968. A receipt signed and identified by Borges and Cimo was filed in evidence indicating the payment on that date of $1,350 representing $54 per share for the stock. Borges testified that payment was made and received on that date but that the certificate which he had previously sent to Kelsoe with the transfer signed in blank was still in Kelsoe's possession and he had Kelsoe send it to Cimo. We concur in the trial judge's finding of a preponderance of evidence to support the fact conclusion that the sale was actually consummated on June 27.
On September 25, 1968, Graffagnino wrote to Kelsoe as follows:
"I have been authorized to tender the offer of $62.09 per share to repurchase all of the stock of National Motor Club of Louisiana, Inc. held by Mr. Phil Borgess [sic].
This offer is based on the book value per share as computed by Koltun, Fried, Woolley, Vigo and Maher, Certified Public Accountants in New Orleans. Will you kindly advise if this is acceptable to your client, and if he is willing to sell his total holdings in National Motor Club of Louisiana, Inc. at this price, let me know what arrangements can be made for the transfer."
This letter was offered in evidence by the plaintiff.
The plaintiff, Cimo, made no request of the defendant corporation for transfer of the stock and reissuance of the certificate *412 until January, 1969. The defendant refused to do so for the reason stated above. Crumpler testified that he had been trying all along to purchase the stock from Borges and had done everything short of filing suit to get it.
The provisions of paragraph 3 of the restrictive agreement were not literally complied with by Borges in that the offer to sell was not personally served on an officer of the defendant, nor by certified mail addressed to the company's office. The trial judge in his reasons for judgment pointed this out but held in effect that the defendant, through its president, Crumpler, had acquiesced in the noncompliance by holding out Graffagnino at the February, 1968 meeting as its agent with authority to negotiate the stock transfer from Borges to the defendant. In reaching this conclusion he was influenced by Graffagnino's letter of September 25 in which he made a firm offer to purchase for the corporation, which representation of authority was never repudiated by any officer of the corporation. We will return to a discussion of this question below.
If this conclusion is valid, we must then determine whether Kelsoe's letters of March 25 and April 12, 1968, were in fact received by Graffagnino. In his reasons for judgment the trial judge resolved the doubt in favor of the plaintiff, saying that while Graffagnino testified that he had no recollection of having received the letters and could not find them in his files, his letter of September 25 to Kelsoe was an apparent answer to those letters.
We can find no fault with the reasoning of the trial judge on this point. The fact that Graffagnino as the corporation's attorney addressed the letter to Kelsoe (and not to Borges, as was a December 18, 1967 letter which we will discuss below) would surely indicate that he had communicated with Kelsoe as Borges' attorney on the subject of the sale of Borges' stock to the defendant corporation. We agree with the trial judge that this letter clearly appears to be in reply to the letters of March 25 and April 12. According to the calendar, of which we take judicial notice, March 25 was a Monday, therefore we will presume, as did the trial judge, that the March 25 letter was received by Graffagnino in due course of the mail no later than Wednesday, March 27. We find no error in the trial judge's finding of fact that the payment was made on June 27. Therefore the stock sale on June 27, 1968, was more than 90 days from the date the offer to sell was received by Graffagnino, as found by the trial judge. If the sale was not legally consummated until delivery of the stock was received, then the sale date was some time after June 27 which would be even more in excess of the 90-day requirement. This also was observed and commented upon by the trial judge.
We now return to a discussion of the question as to whether the defendant waived strict compliance with paragraph 3 of the restrictive agreement and acquiesced in Borges' failure to conform thereto.
On December 18, 1967, Graffagnino addressed a letter to Borges at his Dallas office. The letter was sent by certified mail and the return receipt filed in evidence indicates its receipt by an employee in Borges' office. Borges denied having personally received the letter and disclaimed knowledge of its contents. The letter submitted in evidence by the defendant is as follows:
"Dear Mr. Borges:
Since you are no longer employed or connected in any way with the National Motor Club of Louisiana, Inc., we have been asked to advise you that the corporation does hereby exercise its option to purchase from you the twenty-five shares of nonvoting stock issued to you on February 1, 1966.
Since you have not held the stock for a period of three years, you will be paid par value for the stock in accordance with the various stock agreements.

*413 Please forward the stock to this office or you may have Mr. G. H. Kelsoe handle the matter if you prefer.
 Yours very truly,
 GRAFFAGNINO & KONRAD
 By A. J. Graffagnino"
Defendant's counsel argues in this court that if there is a presumption that Kelsoe's letters to him were received, his letter by certified mail with return receipt should all the more be presumed to have been received by Kelsoe. We agree. But the letter is more damaging than helpful to defendant's case. It indicates (1) that Graffagnino was the authorized representative of the defendant corporation to negotiate a purchase of Borges' stock; and (2) that prior to the February, 1968 meeting his negotiations were with Borges direct and thereafter with Kelsoe as Borges' representative. This tends to corroborate Kelsoe and to support the conclusion that Crumpler agreed at the February meeting for Graffagnino to pursue the stock transfer negotiations as attorney for him and the corporation, and thereby acquiesced in the noncompliance with the strict provisions of paragraph 3 in the negotiations which followed. If the letter is offered in evidence in an attempt to prove that defendant exercised its option to purchase the stock in accordance with the terms of paragraph 4 of the agreement, it fails in that respect because it was not done within 90 days from the termination of Borges' employment with defendant.
There is no issue in this case over the legality of the agreement imposing the restrictions on the stock transfer. Such agreements are generally recognized and are enforceable when imposed in accordance with the statutory provisions and are not unreasonable and notice of the restriction is placed upon the certificate. LSA-R.S. 12:538 (1950) (12:638 in the statute as amended by Act 105 of 1968). The law favors transferability and the restrictions imposed thereon must be construed accordingly. Phillips v. Newland, 166 So.2d 357 (La.App.3d Cir.1964); 25 La.L.Rev. 926 (1965); 18 C.J.S. Corporations § 391. The restrictions imposed in this case are in keeping with the statutory requirements and are not unreasonable if reasonably interpreted and applied.
A literal interpretation and application of the provisions of paragraph 3 of the restrictive agreement, i. e., the absolute requirement, in any event, that Borges' offer to sell to the Company be only in writing made to an officer personally or by certified mail addressed to an officer of the Company at the Company's principal place of business, could lead to an absurdity. Could it be said that an offer to sell mailed to Crumpler by ordinary mail addressed to his residence and receipt proven or acknowledged would not be a compliance with the purpose of the agreement? We think not. To hold otherwise would be in violation of the public policy against unreasonable restrictions against the transferability of stock. Likewise, an offer in writing to the corporation through its attorney held out by it as having a mandate of authority to represent the corporation in respect to the stock purchase should be given effect, though it is not in a strict and literal sense a compliance with the provisions of paragraph 3 of the agreement.
Mr. Graffagnino's letter of December 18 to Borges; Kelsoe's testimony about the meeting in February, 1968 followed by his letters of March 25 and April 12 to Graffagnino; Graffagnino's letter to Kelsoe of September 25all of which represent or recognize Graffagnino as the corporation's agent for the purpose of negotiating a purchase of the stock from Borgessupport the conclusion that he was the corporation's agent for this purpose. Furthermore, Mr. Crumpler testified that he had done everything short of resorting to suit to purchase Borges' stock, but there is no evidence of his contact with Borges on this subject except through his attorney, Mr. Graffagnino.
*414 The defendant also filed in evidence a letter dated November 8, 1968, addressed to Borges at a Little Rock, Arkansas address and sent by certified mail. The letter was returned "unclaimed" though Borges acknowledged the correctness of the address. In that letter Graffagnino referred to himself "as attorney for National Motor Club of Louisiana, Inc." and demanded tender of Borges' stock for repurchase by the corporation. Since Borges did not receive this letter and it was written after Kelsoe's negotiations with Graffagnino and the stock sale, but before the sale was known to defendant, it has no relevance to reliance upon his authority but it does further indicate Graffagnino's authority to represent the corporation in purchasing the stock.
We therefore hold that Mr. Graffagnino acted within the scope of apparent authority held out and acquiesced in by the defendant corporation and that Borges and his attorney, Kelsoe, had a right to rely upon his apparent authority in respect to the stock sale. Ideal Savings & Homestead Ass'n v. Kerner, 208 La. 513, 23 So.2d 200 (1945); Harris v. Automatic Enterprises of Louisiana, Inc., 145 So.2d 335 (La.App. 4th Cir. 1962); Trichel Contracting Co. v. Little Creek Oil Co., 84 So.2d 874 (La.App. 2d Cir. 1956); Cothran v. Ideal Savings & Homestead Ass'n, 21 So.2d 233 (La.App. Orleans 1945); Harrosh v. Fife Bros. Health Ass'n, 1 So.2d 323 (La.App. Orleans 1941); Beneficial Loan Soc. v. Strauss, 148 So. 85 (La.App. Orleans 1933).
In his petition the plaintiff alleged that the stock was purchased by him on March 11, 1968, as evidenced by the transfer certificate of that date, and that "manual" delivery of the certificate was made at that time. Without objection the testimony was admitted showing that in fact the certificate of transfer was signed in blank on March 11, 1968, and the certificate mailed to Kelsoe but that payment was made and receipt given on June 27 and the certificate later mailed to the plaintiff. This was unquestionably evidence in conflict with and in material variance from plaintiff's allegations. Appellant's counsel argues that he was prepared to meet the issue as alleged by plaintiff which would show a sale in violation of the restrictions of paragraph 3 of the agreement. An objection during trial to the admission of all evidence in conflict with the pleadings, especially on matters of material substance, would no doubt have been maintained and defendant's rights protected. LSA-C.C.P. art. 1154 effectively disposes of appellant's belated complaint. That article provides as follows:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
Appellant's counsel contends in his brief in this court that his failure to object to the evidence not in conformity with the pleadings should not be construed as implied consent to an enlargement of the pleadings for the reason that the evidence was pertinent to the issues raised by the pleadings, citing Landry v. Yarbrough, 199 So.2d 377 (La.App. 1st Cir. 1967); Wallace v. Hanover Insurance *415 Company of New York, 164 So.2d 111 (La. App. 1st Cir. 1964). He reasons that the evidence was "pertinent" to the issues in that it "contradicted those issues." We are unable to follow this rationale. The authorities cited are sound in principle that evidence pertinent to other issues pleaded does not enlarge the pleadings automatically by failure to object timely but do not support appellant's contention.
For the foregoing reasons the judgment appealed is affirmed at appellant's cost.
Affirmed.