483 So.2d 929 (1986)
The LOUISIANA WEEKLY PUBLISHING COMPANY, INC., and Constant C. Dejoie, Jr., Individually and as President, Publisher and Stockholder
v.
FIRST NATIONAL BANK OF COMMERCE and Henry B. Dejoie, Individually and as a Stockholder, and Renette D. Hall, Individually and as a Purported Representative of Stockholder, Louise Wilcox, and Louise Wilcox.
Vivian Dejoie ROUSSELL, Constant C. Dejoie, Jr. and Michael Dejoie, As Stockholders of the Louisiana Weekly Publishing Company, Inc., and the Louisiana Weekly Publishing Company, Inc.
v.
Henry B. DEJOIE, Secretary of the Louisiana Weekly Publishing Company, Inc., and the Louisiana Weekly Publishing Company, Inc.
Vivian Dejoie ROUSSELL, and Constant C. Dejoie, Jr. As Shareholders of the Louisiana Weekly Publishing Company, Inc., and the Louisiana Weekly Publishing Company, Inc.
v.
Henry B. DEJOIE, Secretary of the Louisiana Weekly Publishing Company, Inc., and the Louisiana Weekly Publishing Company, Inc.
No. 85-C-1915.
Supreme Court of Louisiana.
February 24, 1986.
*930 Ralph S. Hubbard, III, Yvonne Chalker, New Orleans, for applicants.
Ernest L. Jones, James A. Gray, Jefferson, Bryan & Gray, Roy C. Cheatwood, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for respondents.
WATSON, Justice.
Does a corporate stock transfer restriction, which specifically limits sales and mortis causa donations, apply to an inter vivos donation? The trial court concluded that the intent of the incorporators was to preserve the status of a closed corporation, and therefore the restriction prohibited any stock transfer unless the stock was first offered to the corporation and other shareholders. The Court of Appeal affirmed. The Louisiana Weekly Publishing Company, Inc., et al v. First National Bank of Commerce, et al, 475 So.2d 1126 (La.App. 4th Cir., 1985). A writ was granted to review the judgment. 477 So.2d 1116 (La., 1985).

FACTS
The Louisiana Weekly Publishing Company, Inc., which was incorporated in 1926 by Constant C. Dejoie, Sr., Henry L. Wilcox, and Orlando C.W. Taylor, is governed solely by the articles of incorporation.[1] The corporation does not have by-laws.
The capital stock is now represented by two hundred and fifty shares. There were five stockholders:[2] Henry B. Dejoie, the corporate secretary, with ninety-two shares; his brother, Constant C. Dejoie, Jr., the corporate president and publisher, with ninety-one shares; their sister, Vivian Dejoie Roussell, the second vice-president, with sixty shares; Louise Wilcox, Henry Wilcox's widow, with five shares; and Lawrence Webb with two shares.[3]
*931 Although it is not endorsed on the stock certificates, the articles of incorporation place a transfer restriction on sale of the corporate stock. Article IV provides:
"The subscription for, and the ownership of all stock in this corporation are made and taken upon the condition that any holder of stock desiring to sell the same, shall first offer his stock to the corporation, and the corporation shall have thirty days in which to exercise its option to purchase the same, at the then book value thereof. On its refusal to purchase, the stockholders shall have ten days to exercise their option to purchase such stock at said price, after the expiration of such time the stockholder shall be free to make any other sale of his stock. In the event of the death of a stockholder, all stock held by the deceased shall go to his legal heirs."
In March of 1980, Vivian D. Roussell offered to sell her sixty shares of stock to her brother, Henry B. Dejoie. Vivian decided not to proceed with the sale and Henry unsuccessfully sued for specific performance.
In November of 1982, Vivian sold her sixty shares to another brother, Constant C. Dejoie, Jr., for $25,000, without first offering them to the corporation. Constant took six of the shares and gave one share each to six individuals,[4] leaving him with one hundred and forty-five shares. He called two stockholders' meetings,[5] to elect the six new stockholders as corporate officers and directors. Before the donation, Constant and Vivian owned one hundred and fifty-one shares, or sixty percent of the stock, but controlled only two of the five seats on the board.
Subsequently, Henry convened two meetings of the other board members: he was elected the new corporate president and his daughter, Renette Dejoie Hall,[6] was elected the new corporate treasurer.
Henry sued to challenge Vivian's stock sale, Constant's donations, and Constant's actions at his two meetings. The trial court ruled that the actions taken at the meetings called by both Constant Dejoie and Henry Dejoie were invalid for lack of proper notice. In addition, the trial court annulled Vivian's stock sale to Constant for lack of compliance with Article IV of the articles of incorporation and held that those sixty shares were treasury stock.
On November 18, 1984, following the trial court judgment, Henry sent notice of a December shareholders' meeting to all stockholders. Vivian was not included. Two days later, Constant and Vivian rescinded the invalidated sale and Vivian gave Constant a proxy for her sixty shares. At the December meeting, Henry refused to recognize Vivian as owner of the shares and Constant as holding their proxy.
Constant, Vivian, and the corporation contested the validity of the December shareholders' meeting and the lack of notice to Vivian, and filed suit for an injunction. The suit was converted into an action in quo warranto. Shortly after this suit was filed, Henry, claiming to be acting on behalf of the corporation, tendered a $25,000 check to Vivian for her sixty shares of stock. Vivian refused to sell, and Henry filed the money in the court registry. Two months later, Constant donated one of his ninety-one shares of stock to his son, Michael C. Dejoie. Henry refused to recognize the donation and record Michael as a shareholder.
On April 12, 1985, the trial court ruled against Vivian and Constant, and upheld the validity of the December shareholders' meeting. Citing its earlier judgment, it held that Vivian's refusal of the corporation's *932 $25,000 offer caused her sixty shares to become treasury stock.
Constant, Vivian, and the corporation filed suit for a writ of mandamus ordering Henry, the corporate secretary, to amend the corporate records to recognize Vivian and Michael as shareholders. The trial court held that Henry was right in refusing to alter the corporate records because Vivian's stock became treasury stock when she refused the corporation's offer to purchase her shares, and Constant's donation to Michael was invalid. Recognizing that the corporate charter did not specifically restrict transfer of stock by donation, the trial court held it was the incorporators' intent to preserve the posture of the company as a closely-held corporation. The trial court prohibited the transfer of the corporation's stock by "sale, donation, or otherwise" absent compliance with Article IV of the articles of incorporation.
The Court of Appeal consolidated appeals from the three lower court judgments, reversed the trial court's decisions relating to Vivian's shares, but affirmed as to the share donated to Michael C. Dejoie. The Court of Appeal concluded that Vivian did not offer to sell her stock to the corporation. The fact that she sold her stock to Constant, in contravention of Article IV of the articles of incorporation, did not create an offer to the corporation for book value or $25,000. Therefore, the stock did not convert to treasury stock and Vivian remained the owner of the sixty shares of stock. However, the Court of Appeal held the restrictions set forth in Article IV of the articles of incorporation apply to stock donations inter vivos. The Court of Appeal invalidated Constant's donation to Michael, and held "[t]he inclusion of the provision relative to restricting even donations mortis causa evidences a clear intent on the part of the incorporators to restrict and govern the transfer of stock from the moment of acquisition to the grave."
Despite the complex history of events since 1980, the only live issue is the donation from Constant to Michael.

ISSUE
Does a transfer restriction placed on the sale and donation mortis causa of corporate stock apply to a donation inter vivos?

LAW
Transfer restrictions placed on the sale of corporate stock are valid. See LSA-R.S. 10:8-204. State ex rel Scott v. Caddo Rock Drill Bit Co., 141 La. 353, 75 So. 78 (La., 1917). Validity of the sale transfer restriction in Article IV is not at issue. The question is whether the restriction inferentially applies to inter vivos donations.
"Any restriction on the right of a stockholder to transfer his shares must be construed strictly." See Christy, Transfer of Stock, 5:8, and the authorities cited therein. Others have recognized "... the basic proposition that restraints on alienation will be strictly construed and not extended beyond their express provisions." Henn and Alexander, Laws of Corporations, Third Ed., p. 762.
Phillips v. Newland, 166 So.2d 357 (La. App. 3rd Cir., 1964), writ den. 246 La. 872, 167 So.2d 679 (1964), which involved a transfer restriction on the sale of corporate stock, stated the rule that "... in interpreting such clauses, it must be remembered that the law favors unrestrained transferability of stocks and restraints on alienation must be strictly construed." The principle has been consistently followed in Louisiana.[7] See Cimo v. National Motor Club of Louisiana, Inc., 237 So.2d 408 (La.App. 4th Cir., 1970); Goldblum v. Boyd, et al, 341 So.2d 436 (La.App.2d Cir., 1976).
Professor Thomas J. Andre, Jr., illustrated the Phillips court's meaning when he wrote:

*933 "It seems most probable that what the court intended to indicate by the phrase was simply that the law assumes the free transferability of property, and as a result, any deviation from that norm must be strictly construed in favor of transferability."[8]

CONCLUSION
Here, the deviation from the norm is the attempt to restrict inter vivos donations without an explicit restriction in the articles of incorporation. This deviation calls for strict scrutiny of the restraints on transferability. While Article IV prohibits a sale transfer of corporate stock which is not first offered to the corporation, and prohibits a mortis causa donation, other than to "legal heirs," the article does not explicitly prohibit an inter vivos donation of the corporate stock. Strict construction does not permit implication of a prohibition in the Article. Instead, it requires a literal interpretation, with ambiguities, if any, construed in favor of transferability. If the incorporators had wanted to restrict transferability through inter vivos donation, they should have placed that restriction in the articles of incorporation. For lack of an express prohibition of inter vivos donations, the Article must be construed in favor of transferability and the donation must be upheld.
The Court of Appeal incorrectly relied on Blum v. Latter.[9]Blum involved a dispute over donation of corporate stock. The Latter & Blum, Inc., charter specifically denied shareholders the right to "sell or otherwise dispose" of the corporate stock without first offering it to the other shareholders. Blum is clearly distinguishable from this case; the Louisiana Weekly Publishing Company, Inc., charter did not place a restriction on any disposal of corporate stock, other than sales or donations mortis causa.[10]
The restriction placed on the transfer of Louisiana Weekly Publishing Company, Inc., stock applied solely to the sale or mortis causa donation of the stock. Restrictions must be strictly construed in favor of transferability. The charter did not restrict all forms of transfer. Since there is no express restriction on an inter vivos donation, the gift from Constant C. Dejoie, Jr., to Michael C. Dejoie, must be upheld.

DECREE
The donation from Constant C. Dejoie, Jr., to his son, Michael C. Dejoie, is a valid transfer. The trial court and the court of appeal erroneously declared the donation invalid and their judgments to that effect are reversed. A writ of mandamus is hereby issued directing defendants: to recognize Michael C. Dejoie as owner of one share of stock in the corporation; to issue a *934 stock certificate for one share to him; and to record the ownership of that stock on the books of the corporation.
REVERSED IN PART;[11] WRIT OF MANDAMUS ISSUED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
There is a general principle that restrictions on the free alienability of property should be strictly construed. Although shares of corporate stock are a species of property, there is no generalized public policy against the imposition of transfer restrictions on corporate stock. Andre, Restrictions on the Transfer of Shares: A Search for a Public Policy, 53 Tul.L.Rev. 777 (1979). Restrictions on transferability of stock are common and serve a useful purpose in close corporations. While restrictions should not be implied and must be expressed at least generally, there is no reason, once restrictions have been imposed on free transferability, to use the theory of strict construction to frustrate the clear intent of those imposing the restrictions.
The basic principle on which this case should be determined is that agreements should be construed according to the true intent of the parties. Here, the incorporators agreed to set up a procedure in the Articles of Incorporation by which they clearly intended for the stock in the close corporation to remain forever in the hands of the incorporators or their legal heirs. While the incorporators did not include an express restriction on donations inter vivos, they did expressly alter the usual rule of allowing free transferability. Under these circumstances one cannot reasonably say that the incorporators intended to restrict only the sale of the stock or its donation by will and to have a loophole for donations inter vivos. The restriction should be interpreted so as to give effect to the true and clear intent of the incorporators.
NOTES
[1] The 1926 Articles of Incorporation have been amended on several occasions to increase the capital, to increase the number of shares representing the capital, and to add minor stockholders.
[2] On October 7, 1927, the stockholders passed a resolution to require "not less than seven nor more than twelve" board members, but Article VI was amended to state that there would be twelve stockholding members. Since the corporation had only five shareholders, either seven or twelve board members was impossible.
[3] Lawrence Webb died while this case was pending in the court of appeal. Consequently, his two shares were distributed, with one share going to each of his two children.
[4] C. Dejoie, Jr., donated the six shares to: Michael C. Dejoie, Julia Dejoie, Dr. Ambrose Pratt, Louis Gerdes, Jr., John S. Keller, and Dr. John Belden.
[5] The meetings were held on June 9, 1984, and July 9, 1984.
[6] Louise Wilcox had appointed Renette D. Hall proxy of her five shares of Louisiana Weekly Publishing Company, Inc., stock.
[7] Avoyelles Trust & Savings Bank v. Liliedahl, et al, 348 So.2d 153 (La.App.3d Cir., 1977), writ den. 350 So.2d 1228 (La., 1977), restated the principle announced in Phillips, but allowed the restriction to apply to a judicial, involuntary transfer as distinguished from a voluntary one.
[8] Andre, Restrictions on the Transfer of Shares: A Search for Public Policy, 53 Tul.L.Rev. 776, 822 (1977).
[9] Blum v. Latter, 163 So.2d 189 (La.App. 4th Cir., 1964), writ den. 246 La. 717, 167 So.2d 301 (1964).
[10] In order to be effective under current statutory law, all transfer restrictions must be on the face of the stock certificate. The exception is when the transferor has actual knowledge of the restriction. See Thibodeaux v. Pioneer Land Development & Realty Corporation, et al, 420 So.2d 1162 (La.App. 5th Cir., 1982), amended 423 So.2d 1178 (La., 1982). The restrictions placed on the transfer of Louisiana Weekly Publishing Company, Inc. stock were not placed on the face of the stock certificates; it is not necessary, however, to consider whether Constant C. Dejoie, Jr., had actual knowledge since the parties make no contentions concerning lack of notice.

This requirement became effective on January 1, 1969, which was after the incorporation in 1926 and before the stock transfers from Constant C. Dejoie, Sr.'s estate to the Dejoie children in 1970. The requirement was enacted as part of the Uniform Stock Transfer Act at LSA-R.S. 12:638. It was repealed and re-enacted at LSA-R.S. 10:8-204 and became effective January 1, 1979. LSA-R.S. 10:8-204 states:
"Unless noted conspicuously on the security, a restriction on transfer imposed by the issuer, even though otherwise lawful, is ineffective, but this provision shall not dispense with the requirements of R.S. 12:57(F) and R.S. 12:210(D). A restriction on transfer shall be effective, even if the restriction is not noted on the certificate, against persons having actual knowledge of the restriction."
[11] The other aspects of the Court of Appeal judgment remain undisturbed by this opinion.