DUFRESNE, Judge.
This is an appeal from a judgment on a motion to traverse the detailed descriptive list in a succession proceeding. The contestants are Dorothy Baltazor Walden, who is the daughter and an heir of the decedent, and Wilmer J. Baltazor, Dorothy’s brother, who is a son and heir of the decedent and also the provisional executor for the succession. At issue is the number of shares of voting stock in a family-owned corporation to be included in the assets of the succession. Dorothy Walden contends Wilmer Baltazor erred in listing 60 shares of the stock on the detailed descriptive list because hér mother donated 30 of these shares to her several years before her death.
Elise Lowe Baltazor, who died on October 14, 1977, was the widow of Gregory Albert Baltazor and the mother of Dorothy Baltazor Walden, Albert A. Baltazor and Wilmer J. Baltazor,. all born of her marriage to Gregory Baltazor. On December 10, 1957, Gregory and Elise incorporated a company known as Baltazor, Inc., with 900 authorized shares of stock. The stock was divided into two classes — Class A (voting common stock), of which there were 90 shares; and Class B (non-voting common stock) of which there were 810 shares. The Class A (voting) stock was issued to Gregory and Elise equally, 45 shares each; the Class B (non-voting) stock was issued 405 shares to Gregory, 404 shares to Elise, and one share to their son Albert.
Shortly after the company was incorporated, Gregory and Elise began transferring various amounts of stock to their children in equal amounts by periodic notarial acts of donation. By December 30, 1964, Gregory and Elise each had transferred all their Class B stock and 15 shares of the Class A stock to Albert, Dorothy and Wilmer. This left the parents with 30 shares apiece of the Class A stock.
*1296 Gregory died on April 22, 1970, leaving a will in which he left all his Class A voting stock in Baltazor, Inc., to his wife. On May 7, 1970, by notarial act of donation, Elise Baltazor donated to Dorothy Balta-zor, wife of Ernest Walden, 30 shares of Class A stock of Baltazor, Inc., represented by Certificate #20, dated December 30, 1964. Albert and Wilmer apparently did not learn of this donation until Elise’s succession was opened judicially.
Article XI of the Articles of Incorporation of Baltazor, Inc., contains the following provisions restricting transfers of shares:
“No subscriber or shareholder shall sell, transfer, assign or otherwise dispose of, except through transfer by inheritance, the ownership of his allotment or shares, or any part thereof, unless said allotment or shares are first offered to the corporation and to the remaining subscribers and shareholders, at the bona fide price offered by a third party to the shareholder or subscriber proposing the transfer, by letter filed with the Secretary of the Corporation. * * *
In the event that the other shareholders and/or the Corporation do not exercise their rights within the times prescribed above, then and only then shall the shareholders desiring to sell or otherwise transfer be entitled to sell or transfer to whomsoever he sees fit * *
There is no evidence of compliance with these restrictions for any of the donations.
On February 17, 1972, by judgment of possession rendered in the Succession of Gregory Albert Baltazor, Elise was recognized as the particular legatee of all of her husband’s Class A voting stock in Baltazor, Inc., and was placed in possession of the full ownership of Certificate No. 19, for 30 shares, Class A, dated December 30, 1965, in the name of Gregory Albert Baltazor, and Certificate No. 20, for 30 shares, Class A, dated December 30,1964, in the name of Mrs. Elise Lowe Baltazor.
On February 22, 1974, Baltazor Fabrics, Inc., was incorporated, with Elise and her three children as incorporators. According to the parties, this corporation was intended to handle the management of the Balta-zor retail fabric stores, while Baltazor, Inc., was to manage the corporate real estate holdings. Apparently, however, the real estate and fabric store operations were never segregated and Baltazor Fabrics, Inc., is little more than a paper entity.
Following Elise Baltazor’s death two testaments were found, one a typewritten statutory will dated January 31, 1974, and the other an olographic will dated October 15, 1974. Each contained somewhat different provisions, the statutory will being more favorable to Dorothy Walden than the olographic. Under the statutory will, Dorothy was bequeathed all of her mother’s Class A voting stock in Baltazor, Inc., and Baltazor Fabrics, Inc., and the rest of the decedent’s property was bequeathed equally to the decedent’s children, share and share alike. Under the olographic will, the decedent bequeathed “all the real estate and cash in the corporation” to the three children to be divided one-third each and bequeathed the stock in the stores as follows: 30% each to Albert and Wilmer and 40% to Dorothy, with a final bequest of a diamond ring to Dorothy.
Wilmer and Albert contested the probate of the statutory will, asserting it had been revoked by the posterior execution of the olographic will. Dorothy contended the olographic will merely acted as a codicil to the statutory will. Following a trial on the merits, the district court found that the olographic will was valid and that it revoked in its entirety the statutory will, because the posterior will was diametrically opposed to the first will and the clauses of the wills could not be reconciled.
Thereafter, Dorothy filed the motion to traverse the detailed descriptive list filed by Wilmer, which listed the only assets of the succession as 60 shares of the Class A common stock of Baltazor, Inc., with a fair market value of $1,200,000, and 60 shares of the Class A common stock of Baltazor Fabrics, Inc., listed “for memorandum purposes only.” Dorothy asserted Wilmer’s list was in error because 30 of her mother’s shares in Baltazor, Inc., had already been donated to her.
*1297 The district court denied the motion to traverse, assigning two reasons: first, that the May 7,1970, donation by Elise to Dorothy violated the stock-transfer restrictions of the corporate charter; second, that Dorothy is precluded by res judicata from asserting the validity of the donation of May 7, 1970, because she acquiesced in the subsequent judgment of possession in the succession of her father, in which Elise was placed in possession of the 60 shares of Class A stock of Baltazor, Inc. Dorothy has appealed.
Transfer restrictions placed on the sale of corporate stock are valid. La. Weekly Pub. v. First Nat. Bank of Commerce, 483 So.2d 929 (La.1986). However, restrictions on the transfer of stock must be strictly construed in favor of transferability. Id.
Citing the latter principle, the appellant asserts the critical issue here is the court’s interpretation of “inheritance” as used in Article XI of of the articles of incorporation, which provides that no shareholder may sell, transfer, assign or otherwise dispose of his shares, except through transfer by inheritance. She argues that to construe the restrictions here in favor of transferability, we must consider the term “inheritance” to include not only donations mortis causa but also donations inter vi-vos.
The forced heirship laws of Louisiana grant the forced heir the right to demand collation of inter vivos donations made to other forced heirs. The appellant, thus, contends a donation inter vivos is a part of one’s inheritance because an inter vivos donation to a forced heir is considered an advance on his or her inheritance.
LSA-C.C. art. 1227 defines collation as “the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession.”
Under LSA-C.C. art. 1228, collation is due by descendants:
“Children or grandchildren, coming to the succession of their fathers, mothers or other ascendants, must collate what they have received from them by donation inter vivos, directly or indirectly, and they can not claim the legacies made to them by such ascendants unless the donations and legacies have been made to them expressly as an advantage over their coheirs, and besides their portion.
“This rule takes place whether the children or their descendants succeed to their ascendants as legal or as testamentary heirs, and whether they have accepted the succession unconditionally, or with the benefit of inventory.”
LSA-C.C. art. 1229 sets forth the reasons for collation:
“The obligation of collating is founded on the equality which must be naturally observed between children and other lawful descendants, who divide among them the succession of their father, mother and other ascendants; and also on the presumption that what was given or bequeathed to children by their ascendants was so disposed of in advance of what they might one day expect from then-succession.”
In addition, the Civil Code provides that collation is always presumed unless it has been expressly forbidden or the donor has directed that the gift is made as an advantage or extra portion. LSA-C.C. arts. 1230, 1231.
Although appellant’s argument is plausible, we cannot agree that “inheritance” as used in the stock transfer restriction should include a donation inter vivos to a forced heir. A forced heir can escape the obligation of collation through the donor’s declaration of dispensation from collation (C.C. arts. 1231, 1232) or the donee-forced heir’s renunciation of the donor’s succession (LSA-C.C. art. 1237), so that a donation made to a forced heir cannot always be viewed as an advance on that heir’s share in the succession of the donor. Therefore, to construe the exception allowing escape from the transfer restrictions for “transfers by inheritance” in favor of transferability would not extend the mean *1298 ing of “inheritance” to include a donation inter vivos.
Accordingly, we are compelled to find the May 7, 1970, donation by Elise to Dorothy was null because Elise failed to follow the requirements of Article XI of the Articles of Incorporation regarding transfers of shares. In view of our conclusion on this issue, it is unnecessary to address the other issues raised by the appellant.
For the foregoing reasons, the judgment of the district court is affirmed. The costs of this appeal are assessed against the appellant.
AFFIRMED.